CLARENCE W. AND KYRA A. PHILLIPS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Phillips v. Commissioner
Docket No. 1506-76.
United States Tax Court
T.C. Memo 1979-239; 1979 Tax Ct. Memo LEXIS 282; 38 T.C.M. (CCH) 947; T.C.M. (RIA) 79239; June 25, 1979, Filed *282 Held, amount of deductions to which petitioners are entitled determined. Held further, negligence penalty unwarranted. Clarence W. and Kyra A. Phillips, pro se. Gerald W. Hartley, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' income tax and additions thereto pursuant *283 to section 6653(a) [1] as follows: Sec. 6653(a)
Year
Deficiency
Addition
1972 $ 142.00 $ 7.10
1973
331.00
16.55
1974
6,237.21
311.86
By way of an amendment to answer to the amended petition filed with the Court on February 9, 1977, respondent conceded there was no deficiency for 1972. He also asserted an increased deficiency in 1973 of $987.70 and a reduced deficiency in 1974 of $387.87 due to his determination that the sale of petitioners' residence occurred in 1973, not in 1974 as he determined in the notice of deficiency. The issues remaining for our decision are: (1) whether petitioners are taxable on gain in the amount of $3,837 on the sale of their personal residence located in Hilliard, Nassau County, Florida, during 1973; (2) whether petitioners have substantiated employee business expenses claimed on their 1973 tax return in the amount of $2,080; (3) whether petitioners have substantiated pulpwood business expenses claimed on their 1974 tax return in the amount of $2,640.03; (4) whether petitioners have substantiated farm *284 expenses claimed on their 1974 tax return in the amount of $3,628.84; and (5) whether petitioners are liable for the negligence penalty for the years 1973 and 1974. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Clarence W. and Kyra A. Phillips, husband and wife, filed joint Federal income tax returns for 1973 and 1974 with the Internal Revenue Service Center at Chamblee, Georgia. Petitioners resided in St. Augustine, Florida, at the time they filed their petition herein. During 1971, petitioners purchased approximately eleven acres of wooded real estate located in Hilliard, Nassau County, for $8,029 upon which they constructed their personal residence. During the early part of 1972, the house was destroyed in a fire and petitioners received $10,000 in insurance proceeds as compensation for the loss. Petitioners then contracted with Jim Walters, Inc., to have a second house constructed on the property at a cost of $9,500. Walters constructed only the shell, however, and petitioners purchased most of the material for the home and did the remaining *285 work themselves. [2] They added a garage with the help of a friend who did not charge them for his work. *286 In April 1973, petitioners sold the land and house for a total sales price of $26,000 and claimed a basis of $26700 in the property, in arriving at a $700 loss.Respondent computed petitioners' gain from the sale as follows: Sales Price
$26,000
Less Basis: Land
$8,029
House
9,500
Other Costs
797
18,326
Gain
7,674
Less & 1202 Deduction
3,837
Taxable Gain
$ 3,837
On July 12, 1974, petitioners purchased Lots 14 and 15 of the Wilder Subdivision located on the Nassau River in Fernandina Beach, Florida at a cost of $14,000. Petitioners contracted with Jim Walters for the construction of a house at a cost of $10,700 on Lot 15. Petitioners sold Lot 14 in September 1974 for a total sales price of $9,400. Their basis in the property as of the date of sale was $7,648. Thus, petitioners recognized gain on this sale of $1,752. They did not report this gain on their 1974 tax return, however, they now agree that the $1,752 is taxable in 1974. On their 1973 tax return, petitioners claimed employee business expenses in the amount of $2,080, computed as follows: $20/day times 32 days $ 640
12,000 miles times.12 =
1,440
$2,080
*287 The expenses for the 32 days were incurred while Clarence worked as a heavy equipment operator for John Davis Utilities in the Daytona Beach area. During this period, Clarence traveled every morning from his home in Hilliard to Macclenny (where the main office was located) and from there he would be assigned to any one of two or three different jobs. Petitioners did not have receipts to substantiate all the costs incurred during these 32 days but maintained a log book recording their mileage. Respondent disallowed this deduction in its entirety. During 1974, petitioners reported $2,504.82 in income and claimed certain expenses reflected on Schedule C in connection with their activities in the pulpwood business. The following schedule reflects the expenses claimed, the amount allowed by respondent and the resulting adjustment proposed by respondent: Per Return
Allowable
Adjustment
Supplies
$1,735.66 $ 218.91
$ 1,516.75
Taxes
118.34
28.72
89.62
Insurance
on truck
308.66
0
308.66
Gas and Oil
725.00
0
725.00
Total
$2,887.66 $ 247.63
$ 2,640.03
Included in the cost of supplies are repair costs petitioners allegedly incurred on equipment *288 used in the business. On Schedule F of their 1974 tax return, petitioners reported $1,500 in income and claimed various farm expenses in connection with their hog operation which were adjusted by respondent. The following schedule reflects the amounts claimed on Schedule F, the amount allowed and the proposed adjustment by respondent in the notice of deficiency: Per Return
Allowable
Adjustment
Taxes $ 142.19
$ 72.98 $ 69.21
Feed
511.00
69.11
441.89
Repairs
287.37 [3]
66.63
220.74
Rent of
Pasture
2,332.00 [4]
0
2,332.00
Utilities
48.00 [5]
0
48.00
Hog Pur-
chased
800.00 [6]
0
800.00
Taxable Income Increased
$3,911.84
*289 Following the issuance of the statutory notice in this case, petitioners were able to substantiate additional farm expenses for feed and repairs of $283. As a consequence, respondent's proposed adjustment with regard to the Schedule F expenses is now $3,628.84 rather than the $3,911.84 set forth in the notice of deficiency. Petitioners' records for the years in issue were destroyed in a fire in 1975.They attempted to obtain records and receipts for most of their claimed expenses but were generally unable to do so because either the seller (in a few instances) would not give petitioners a copy of a receipt or, more often, the sellers simply did not retain copies. For a few expenses, petitioners admitted that they did not attempt to obtain receipts. Petitioners' returns were prepared by a bookkeeping income tax service. OPINION We must determine whether petitioners have substantiated the various items disallowed by respondent and whether petitioners were negligent in reporting their income. House in Hilliard
We believe on the record before us that petitioners are entitled to add to the basis in their house in Hilliard $6,830.64 as "other costs". Petitioners reconstructed *290 [7] the basis in great detail, as noted in our findings of fact, providing the cost and number of various items purchased and used by them in the home's construction. Under the circumstances, and because petitioners are credible, we believe this reconstruction is sufficient to establish "other costs" of $6,830.64 and a total basis of $24,359.64. Employee Business Expenses
We cannot allow petitioners a deduction for their claimed employee business expenses while away from home. [8] Section 274(d) requires stricter substantiation than otherwise required under section 162. Petitioners had receipts and records for only some expenses and for only some days and then apparently multiplied these expenses by the number of days Clarence was away from home. This alone will not suffice for purposes of section 274. Thus, petitioners could not have fulfilled the substantiation requirements even at the time the returns were filed. We are therefore faced with the problem of trying to determine *291 the amount of expenses and number of days for which petitioners had receipts. Unfortunately, we do not believe on this record we can make any such allocation. We have similar problems with regard to the mileage claimed. Although Clarence testified that the mileage was incurred for his travel to his job in Daytona Beach, it is questionable whether the log book would have satisfied section 274(d) since there is no evidence as to what information was reflected in it. Moreover, petitioners have not attempted a reconstruction of any of the items and we have a difficult time believing Clarence traveled 12,000 miles in 32 days from Hilliard to Daytona Beach. Pulpwood Business Expenses
We believe petitioners are entitled to all Schedule C expenses claimed in 1974 relating to their pulpwood business. Petitioners' return preparer testified that petitioners *292 provided receipts for all or most of the claimed Schedule C expenses. Based upon her testimony and that of petitioners, we believe they incurred all expenses claimed on Schedule C. Farm Expenses
Petitioners have testified to specific costs of $260 for repairs claimed in 1974 as a farm expense and testified that the remaining amount ($28.37) was for repairs of certain equipment. On these facts, we believe petitioners are entitled to deduct the full amount of the expense claimed. [9] We also believe that petitioners are entitled to the $800 claimed as cost of the hogs. Petitioners testified that they purchased the hogs and some equipment in exchange for a car worth $800 and we found such testimony credible. [10] We also believe that petitioners incurred all of the feed and rental costs claimed on their returns, as they testified. [11]
*293 Negligence Penalty
Finally, based on the entire record before us, we do not believe petitioners were negligent in their record keeping nor in the way they reported income, which admittedly was sometimes erroneous. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. Petitioners calculated they incurred the following expenses in doing their work on the house: ↩
Total
Foundation: 8-1/2 yards cement at
$29.85/yard $ 253.73
20 steel rods at
$2.30/each
46.00
282 blocks
105.00
six loads of founda-
tion at $10/load
60.00
Plumbing: Cost of roughing in
800.00
Floor Slab: 29 yards cement at
$29.85/yard
865.65
3 rows, wire mesh to
go in floor $39.95/roll
119.85
Garage: 32 2 inch X 6 inch 16 feet long,
$4.68/each
149.76
32 2 inch X 6 inch 20 feet long,
$7.60/each
243.20
80 2 inch X 4 inch 8 feet long,
$1.92/each
153.60
24 sheets of sheeting,
1/2 inch 4 inch X 8 inch $6.50 sheet
156.00
9 squares of shingles
for roof, $15.25/sq.
137.25
Four rolls of felt,
$6.90/roll
27.60
Metal eaves drips, $10
10.00
Roofing nails
5.00
Two metal overhead garage
doors, $164/each
328.00
Two windows, $15/each
30.00
Two outside entrance
doors, $50/each
100.00
30 blocks for roof struc-
ture
25.00
Garage Subtotal $1,365.41
Wiring for house (based on electricians
estimate)
1,600.00
Fencing: 8 rolls at $40/roll
320.00
200 fence posts at $1/post
200.00
Barn
Structure: 15 12 feet creosoted pilings
at $12/each
180.00
Tin roof, 50 9 feet pieces,
50 8 feet pieces, 54 2 inch X 4 inch,
18 inch long
300.00
New 2 inch deep rock well with tank & pump
500.00
Driveway: Metal cover for entrance
115.00
TOTAL
$6,830.64
3. Petitioners calculated they spent $260 for hog wire and fence posts. The remainder of the $287.37 was for repairs on automatic feeders, waterers, and an electric fence. ↩
4. The rental expense includes, in part, interest paid (presumably on a mortgage) on land owned by petitioners. ↩
5. Utility expenses were based on the extra monthly cost incurred for the automatic waterers and electric fencing. ↩
6. Petitioners traded a car valued at $800 for which they received the hogs, two 1,500 pound automatic feeders and six automatic waterers.↩
7. A taxpayer is, of course, permitted to reconstruct his expenditures where the failure to produce adequate records is due to destruction from a fire. Cf. section 1.274-5(c)(5), Income Tax Regs.↩
8. Respondent does not challenge the contention that such expenses do in fact qualify as away from home.Cf. Norwood v. Commissioner,66 T.C. 467 (1976) and Turner v. Commissioner,56 T.C. 27↩ (1971), vacated and remanded on respondent's motion by an unpublished order (2d Cir., Mar. 21, 1972).
9. Respondent does not contend that the expenses claimed for fence repairs were, even in part, a capital expenditure. ↩
10. Respondent does not set forth any argument for allocating some of the $800 purchase cost to the machinery, or that the purchase of the equipment is a nondeductible capital expenditure, arguing only the lack of substantiation. ↩
11. We note that the rental expense includes interest on other property petitioners owned.It is unclear whether the interest would, on the facts presented, be a personal, rather than a business expense which would have to be deducted under section 163. Since petitioners would probably not itemize deductions but rather take the standard deduction, it may make a difference where the deduction is properly placed. Although there is nothing in the record from which we can reasonably estimate the proper amount, we believe a proper inference is that most of the payment was for rent. Since respondent does not make any arguments for allocation, we hold that all of the claimed expenses are deductible.↩